EMILY BOWING *v.* DELAWARE RAYON COMPANY.

(*February* 15, 1937.)

LAYTON, C. J., and RODNEY, J., sitting.

*Howard A. Miller* for plaintiff.

*William Prickett* for defendant.

Superior Court for New Castle County, January Term, 1937.

LAYTON, C. J., delivering the opinion of the Court:

 The declaration avers that, as a result of disulphide poisoning, "the plaintiff experiences periods of irra-

tionality, unconscious spells, great physical weakness, dizziness, boils, shock to nervous system, lack of control over self, nightmares, crying spells, headaches, weakened eyesight and loss of libido."

The alleged injurious results are so varied in their nature that examinations by specialists in several branches of medical science may well be required if the purpose of the statute is to be given effect. Medicine is, perhaps, the most highly specialized of the learned professions. No doubt the various fields overlap to an extent, yet they are recognized by the profession, and are recognizable.

The statute was intended to provide a means whereby the true nature and extent of a plaintiff's injuries may be shown to the jury. In another phase of this case (188 *A.* 769, 770), this court said,

"The statute was enacted in the furtherance of justice. Its purpose is to prevent impositions and frauds, by the discovery of the truth with respect to matters which a plaintiff himself, in a personal injury action, offers for judicial investigation."

In the exercise of what we think is a reasonable discretion, having in mind the purpose of the statute, and the injuries alleged to have been sustained, a general practitioner of medicine, a neurologist, a psychiatrist, a gynecologist, and a specialist in genito-urinary diseases will be appointed to examine the plaintiff.

■ We are inclined to keep strictly within the letter of the statute.

The plaintiff is a female, and she is entitled, under the act, to have the examinations made before a physician or surgeon of her own sex. She is not entitled to have the examination conducted in the presence of her own physician, unless the physician is a female.

The statute does not provide for the presence of counsel at examinations, and, we think, there are sufficient reasons

why they should not be present. No useful purpose would be served, and examinations would be, perhaps, interfered with and unduly prolonged.

The purpose of the statute is to lessen the danger of fraud by enabling the defendant to prepare himself properly for trial. It places a defendant on an equal footing, as nearly as may be, with a plaintiff, so far as concerns the opportunity to discover the true nature and extent of the injuries suffered.

The court appoints the examining physicians, but they conduct the examinations as their experience and judgment command. They are not constituted a commission to hold an inquisition and to make a report. They testify at the trial as do other witnesses to the facts or conclusions ascertained and reached from such examination. Formal reports, either to the court or to the parties are not within the purview of the act; but, necessarily, the results of the examinations are to be communicated to the defendant, or his counsel, for, otherwise, the defendant would be as ignorant as before of the plaintiff's physical condition, and the purpose of the statute would be negatived.

The Act seems to have been taken from a statute of the State of New York. See *Section* 873 of the *Code of Civil Procedure, Chapter* 721, *Laws* 1893; *Civil Practice Act,* § 306, *c.* 925, *Laws* 1920. It has been commented upon in several cases. See *Green v. Middlesex R. Co.,* 10 *Misc.* 473, 32 *N. Y. S.* 177; *Herbert v. Brooklyn Heights R. Co. (Co. Ct.),* 177 *N. Y. S.* 901; *Kelman v. Union R. Co.,* 202 *App. Div.* 487, 195 *N. Y. S.* 313.

Let an order be prepared.