Malinda **PETERS**, Plaintiff,

v.

**Cecil Wayne NELSON and Della Nelson, Defendants.**

No. C 93–4008.

United States District Court, N.D. Iowa, W.D.

Feb. 24, 1994.

Robert L. Horak, Horak Law Office, Jefferson, IA and Jeffrey R. Anderson, Reinhardt Anderson, Saint Paul, MN, for plaintiff–Malinda Peters.

Richard J. Barry, Montgomery Barry Bovee, Spencer, IA, for defendants Cecil Wayne Nelson and Della Nelson.

### *ORDER*

JARVEY, Chief United States Magistrate Judge.

This matter comes before the court pursuant to defendants' January 26, 1994, motion for an order to require plaintiff to submit to mental examination and to extend defendants' deadline to designate expert witnesses (docket number 10). Plaintiff resisted the motion on February 8, 1994. The motion is granted.

Plaintiff Malinda Peters (Peters) filed this lawsuit on January 15, 1993, alleging that she was sexually abused while she was a minor by her step-grandfather, defendant Cecil Wayne Nelson, and alleging that Cecil's wife, defendant Della Nelson, failed to prevent such abuse. The complaint alleges intentional infliction of emotional distress, battery, negligent infliction of severe emotional distress, outrageous conduct, and negligence, and seeks punitive damages. The present dispute involves the Nelsons' efforts to secure mental examinations of Peters by both a psychiatrist and a neuropsychologist.

Pursuant to court-ordered deadlines, Peters disclosed her medical expert, licensed psychologist Susan Phipps–Yonas, Ph.D., on October 28, 1993. Peters provided the Nelsons with a copy of Dr. Phipps–Yonas's evaluation dated October 11, 1993. The Nelsons then concluded that it would be necessary to employ both a psychiatrist and a neuropsychologist in order adequately to defend against Peters's allegations. In a letter dated December 20, 1993, the Nelsons notified Peters that they had made arrangements for Peters to be seen by a psychiatrist, Dr. Michael Taylor, on January 5, 1994, and requested that Peters schedule an appointment with their chosen neuropsychologist, Dr. Craig Rypma, at a time convenient for Peters.

Peters objected to two examinations, appeared only for the examination by Dr. Taylor, and has refused to schedule an appointment with Dr. Rypma. Peters made two separate requests for some legal authority the Nelsons believed supported their assertion that they were entitled to two independent medical examinations of Peters.[1] The parties were unable to reach an amicable resolution of their dispute and the Nelsons filed the instant motion.

The Nelsons argue that they have an absolute right to require Peters to be examined by both experts. They argue that Peters's claim is complex and based on allegations of extensive mental injury of uncertain cause and origin. The Nelsons therefore argue that examination by specialists in two different fields is appropriate. They assert further that if they are entitled to only one examination and one expert witness, that the expert they would rely upon would be Dr. Rypma. The Nelsons assert that at a minimum they have the right to choose the doctor to do the examination, not to have the plaintiff choose which medical examination she will accept. The Nelsons therefore request that the court order Peters to submit to examination by Dr. Rypma and extend their deadline to designate experts until after Dr. Rypma has examined Peters.

Peters argues that there is no authority for the Nelsons's assertion that they are entitled to a second examination. She argues, first, that there is no right under *Fed. R.Civ.P.* 35(a) to any independent medical examination. Next, she argues that the Nelsons cannot meet the "good cause" requirement for a second examination. Peters also

---

1. In response, and in their brief, the Nelsons cited only West's Federal Practice Manual § 8399, which states:

    There are two situations; one, where a complete examination of a party requires the participation of a number of medical specialists, and second, where a second examination of the same condition is sought. The first is commonly permitted where each of the separate examinations is relevant to a condition in controversy.

argues that the potential painfulness and dangerousness of another mental examination outweighs the Nelsons's need for a further examination. She asserts that Dr. Rypma's examination is needlessly duplicative of Dr. Taylor's comprehensive examination and that the Nelsons are merely "shopping" for a favorable medical report while inflicting an intrusive procedure on Peters which will require her to recount yet again her sexual exploitation by the Nelsons.

Fed.R.Civ.P. 35(a) provides, in pertinent part,

> [w]hen the mental or physical condition (including blood group) *of a party* or of a person in the custody or under the legal control of a party, *is in controversy,* the court in which the action is pending *may* order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. *The order may be made only on motion for good cause shown....*

(Emphasis added). The United States Supreme Court addressed the requirements of *Rule* 35 in *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

> Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements ... are necessarily related.... [These requirements] mean[ ] ... that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.

*Schlagenhauf v. Holder*, 379 U.S. 104, 118–19, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964) (citations omitted); *see also Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 208 (5th Cir. 1990) (quoting *Schlagenhauf*); Notes of Advisory Committee, 1970 Amendment (stating that subsequent amendment had no effect on the stress placed on these requirements by *Schlagenhauf*); *Brown v. Ringstad*, 142 F.R.D. 461, 463 (S.D.Iowa 1992) (good cause requirement). In *Schlagenhauf,* the Court

stated that the "in controversy" and "good cause" requirements cannot be met by "mere conclusory allegations of the pleadings," nor by "mere relevance to the case." *Schlagenhauf, supra,* 379 U.S. at 118–19, 85 S.Ct. at 242–43. Rather, "the movant must show that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.*

Of course, there are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury ... places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.

*Id.*

■ Additionally, the movant has no absolute right to an examination by a particular physician of his or her choice, *Stinchcomb v. United States,* 132 F.R.D. 29, 30 (E.D.Penn. 1990); Wright & Miller, Federal Practice and Procedure: Civil § 2234, nor even to *any* examination, in light of the *Rule's* discretionary terms. *Fed.R.Civ.P.* 35(a) (court "may" order examination). Rather, even when good cause is shown, whether to order a proposed examination is committed to the discretion of the court. *Hardy v. Riser,* 309 F.Supp. 1234, 1241 (N.D.Miss.1970); *Moore v. Calavar Corp.,* 142 F.R.D. 134, 135 (W.D.La.1992); *Stinchcomb, supra,* at 30; *see also Schlagenhauf, supra,* 379 U.S. at 118, 85 S.Ct. at 242 (permitting examination demands "discriminating application" of *Rule's* requirements by district judge).

■ However, *Rule* 35 does not limit the number of examinations. *Moore, supra,* at 135; *Lewis v. Neighbors Construction Co., Inc.,* 49 F.R.D. 308, 309 (W.D.Mo.1969). Nor would such a limitation be a judicious one. *Moore, supra,* at 135. Each request for an independent medical examination must turn on its own facts, and the number of examinations to which a party may be subjected depends solely upon the circumstances underlying the request. *Id.* Even when an examination has been previously ordered in the same case, a subsequent examination

may be ordered if the court deems it necessary. *Lewis, supra,* at 309 (citing 4 Moore's Federal Practice para. 35.04, p. 2566, n. 3.).

Examples of circumstances in which courts have held sufficient cause existed to justify second examinations include the following: (1) separate injuries calling for examination by distinct medical specialties, *Marshall v. Peters,* 31 F.R.D. 238 (D.C.Ohio 1962); (2) where a physician requires assistance of other consultants before he can render a diagnosis, *Little v. Howey,* 32 F.R.D. 322 (W.D.Mo. 1963); (3) where the first examination was not adequate or complete, *Mayer v. Illinois Northern Ry.,* 324 F.2d 154 (7th Cir.1963); *Strasser v. Prudential Ins. Co.,* 1 F.R.D. 125 (W.D.Ky.1939); and (4) where a substantial time lag occurred between the initial examination and trial, *Lewis v. Neighbors Constr. Co.,* 49 F.R.D. 308 (W.D.Mo.1969); *Vopelak v. Williams,* 42 F.R.D. 387 (D.C.Ohio 1967). *See also Moore, supra,* at 135 (collecting cases involving second examinations).

> In *Schlagenhauf v. Holder,* 321 F.2d 43 (7th Cir.1963), *vacated on other grounds,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), the court said in dictum that "the number of examinations ordered should be held to the minimum necessary considering the party's right to privacy and the need for the court to have accurate information." Some cases can be found where the second examination has been refused. *Rutherford v. Alben,* 1 F.R.D. 277 (S.D.W.Va.1940); *Murdaugh v. Queens–Nassau Transit Lines, Inc.,* 280 App.Div. 826, 113 N.Y.S.2d 804 (1952); *Enyart v. Sante Fe Trail Transportation Co.,* 241 S.W.2d 268 (Mo.1951). The reason generally given is that there had been no showing of a change in the situation.

*Moore, supra,* at 135 (quoting *Vopelak v. Williams,* 42 F.R.D. 387, 389 (D.C.Ohio 1967); and itself denying second examination for lack of change in circumstances). Nor have courts been willing to order batteries of examinations by different specialists unless each was supported by good cause. *See Schlagenhauf, supra,* 379 U.S. at 120–21, 85 S.Ct. at 243–44 (denying examinations by experts in four different medical specialties because no good cause had been shown for such broad examinations); *Stinchcomb, supra,* at 30 (declining to permit battery of examinations by one specialist requested pursuant to *Rule* 35 without hearing to determine need for each test in light of invasiveness and pain to which plaintiff might be subjected). Yet, courts should not allow a plaintiff routinely to rely on the very condition of which he complains to defeat a defendant's ability to prove that the defendant did not cause that condition. *Stinchcomb, supra,* at 30.

■ In summary, the *Rule* requires that for each examination sought (1) the party's physical or mental condition must be in controversy; (2) the expert must be either a physician or a psychologist; and (3) good cause must be shown. *Acosta, supra,* at 208; *Stanislawski v. Upper River Services, Inc.,* 134 F.R.D. 260, 261 (D.Minn.1991).

■ To put his or her mental condition in controversy, a plaintiff must assert a claim of mental or psychiatric injury. *Tomlin v. Holecek,* 150 F.R.D. 628 (D.Minn.1993); *Cody v. Marriott Corp.,* 103 F.R.D. 421, 422 (D.Mass.1984). Peters has asserted such claims in the present action and concedes that her mental condition is "in controversy" in the present matter. Nor is there any doubt that the examinations the Nelsons seek are by expert physicians or psychologists. Peters argues, however, that the Nelsons cannot meet the good cause requirements of *Rule* 35 for *two* examinations.

It would seem that Peters's good cause objections cannot stand in light of the United States Supreme Court's holding in *Schlagenhauf* that a plaintiff in a negligence action, such as this one, who asserts mental or physical injury, as does Peters, provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury. *Schlagenhauf, supra,* 379 U.S. at 119, 85 S.Ct. at 243. However, courts have more recently held that good cause has not been shown where examinations would be needlessly duplicative, cumulative, or invasive. *See, e.g., Acosta, supra,* at 209 (finding good cause was not shown where the defendant already had the information it sought to pursue its claims without repetitive examination of its own); *Stanislawski, supra,* at 262 (finding good cause not shown where defendant had already been provided with ample material upon which expert could base an

opinion without personal examination of the defendant).

The court is satisfied in the circumstances of this case that the Nelsons have shown good cause for two examinations by experts in different specialties. Both requests were made at the same time, thus there can be no credible allegation of expert "shopping." The Nelsons concluded that both specialists were necessary in light of the complexity of the mental injuries and their possible causes alleged by Peters.

Nor is this a case where a second examination by the same specialist is demanded because of an alleged change in circumstances or lag in time between the first examination and trial or because of plaintiff's claims of continuing injury. Rather, this is a case where more than one specialist must be consulted in order to determine if there are multiple injuries with different sources, to develop an adequate diagnosis, and where the first examination to which Peters submitted was not complete or adequate on its own. The court concludes that the second examination is not needlessly duplicative; therefore, good cause has been shown for the second examination. Dr. Taylor is a psychiatrist, and Dr. Rypma is a neuropsychologist. The tests they apply and the manner in which they evaluate their results are not identical and are not even likely to be based on the same data, such that one doctor could rely on data gathered by another, and arrive at an expert opinion without a personal examination of the plaintiff.

The court concludes that this is a case precisely within the scope of circumstances identified by the *Schlagenhauf* court where plaintiff's allegations of injury provide good cause for defendant to pursue adequate examinations to determine the existence and extent of plaintiff's injuries. The court also concludes that Peters should not be permitted to raise the very condition of which she complains to defeat the Nelsons' ability to prove that they did not cause that condition. *Stinchcomb, supra,* at 30. Finally, the court concludes that allowing the two examinations requested is keeping the number of examinations to the minimum necessary considering the party's right to privacy and the need for the court to have accurate information.

Although the court notes that the Nelsons do not have an absolute right to a second examination, or even to an examination by the doctor of their choice, the court concludes that the Nelsons have selected a qualified neuropsychologist and have shown good cause to allow him to examine Peters despite the fact that Peters has already submitted to examination by Dr. Taylor. Peters will be ordered to submit to examination by Dr. Rypma and is directed to arrange a mutually convenient time for that examination to take place. The deadline for the Nelsons to designate their experts will be extended until Peters has submitted to Dr. Rypma's examination.

Upon the foregoing,

IT IS ORDERED

That defendants' January 26, 1994, motion for an order to require plaintiff to submit to mental examination and to extend defendants' deadline to designate expert witnesses (docket number 10) is granted. Plaintiff shall submit to examination by defendants' second expert and the deadline for defendants to designate their experts is extended until ten days following that examination.